BRAHM, Appellant,

v.

BEAVERCREEK TOWNSHIP BOARD OF TOWNSHIP TRUSTEES, Appellee.

[Cite as *Brahm v. Beavercreek Twp. Bd. of Trustees* (2001), 143 Ohio App.3d 205.]

Court of Appeals of Ohio,
Second District, Greene County.

No. 2000 CA 104.

Decided May 18, 2001.

*Richard C. Brahm* and *Catherine A. Cunningham,* for appellant.

*W. McGregor Dixon, Jr.,* for appellee.

WOLFF, Presiding Judge.

Petitioners for annexation from Beavercreek Township to the city of Kettering appeal from a judgment of the Greene County Court of Common Pleas, which affirmed the denial of their petition.

The petitioners filed a petition for annexation with the Greene County Board of Commissioners ("the commissioners") in September 1999 requesting that 41.44 acres of Beavercreek Township known as Walden Lakes be annexed to Kettering. Approximately eighty-four percent of the property owners in the area to be annexed filed affidavits in support of the petition. The commissioners conducted a hearing on the petition at which evidence was presented and testimony offered from property owners and city and township officials. Following the hearing, the

commissioners denied the petition for annexation based on Kettering's failure to provide comparable snow and ice removal.

The petitioners appealed to the trial court pursuant to R.C. 2506.01. The trial court concluded that Kettering had a slight advantage geographically and "numerically" in police and fire personnel and equipment and that it was able to provide recreation, street sweeping, and leaf collection services unavailable to the township residents. The trial court found that the detrimental effects to the residents of the proposed area were Kettering's income tax, its inferior ice and snow removal, and the loss of the relationship that the Beavercreek Police Department[1] had developed with the citizens of the territory. After considering the benefits and detriments of annexation for the proposed area and the wishes of the owners, the trial court affirmed the commissioners' decision, observing that it was a "close call."

The petitioners raise one assignment of error on appeal:

"The trial court's decision upholding the county commissioners' denial of the annexation of 41.444±acres to the city of Kettering on the grounds that the 'general good' of the territory would not be served is illegal, arbitrary, capricious, unreasonable and/or unsupported by a preponderance of the substantial, reliable and probative evidence on the record as a whole."

The petitioners contend that the trial court erred in affirming the commissioners' decision because a petition for annexation must be granted where a majority of the property owners supports annexation and adequate services can be provided by the city to which annexation is sought. The petitioners also claim that Kettering's income tax and the relationship of the Beavercreek Police Department with the citizens of the proposed area were improper considerations.

■ It is the policy of the state of Ohio to encourage annexation by municipalities of adjacent territory. *Smith v. Granville Twp. Bd. of Trustees* (1998), 81 Ohio St.3d 608, 613, 693 N.E.2d 219, 223; *Middletown v. McGee* (1988), 39 Ohio St.3d 284, 285, 530 N.E.2d 902, 903–904. In enacting R.C. Chapter 709, one of the intentions of the legislature was to give an owner of property freedom of choice as to the governmental subdivision in which the property is located. *McGee*, 39 Ohio St.3d at 286, 530 N.E.2d at 904–905; *Smith*, 81 Ohio St.3d at 614, 693 N.E.2d at 223–224.

■ "[I]n considering an annexation petition filed under R.C. 709.033, the board of county commissioners must grant the annexation if it is determined that the annexation will be for the 'general good of the territory sought to be

---

1. At the time of the hearing, the township had a contract with the city of Beavercreek for the provision of police services.

annexed.'" *Id.* at paragraph one of the syllabus. Accordingly, R.C. 709.033 limits the discretion to be exercised by county commissioners in annexation proceedings and grants the commissioners the discretion to make only those factual determinations specifically called for in the statute. *Lariccia v. Mahoning Cty. Bd. of Commrs.* (1974), 38 Ohio St.2d 99, 101–102, 67 O.O.2d 97, 98–99, 310 N.E.2d 257, 258–259; *In re Petition to Annex 320 Acres to S. Lebanon* (1992), 64 Ohio St.3d 585, 596, 597 N.E.2d 463, 471. In considering the general good of the property to be annexed, the commissioners do not have to be presented with evidence that the annexation will produce a discernible benefit to the land to be annexed; rather, they must be shown merely that no material benefit which the land currently enjoys will be lost if the proposed annexation takes place. *Washington Twp. Bd. of Trustees v. McLaughlin* (Sept. 29, 1995), Montgomery App. No. 14830, unreported, 1995 WL 634374. The wishes of the owners to be annexed are relevant to the welfare of the territory and must be considered by the commissioners in their determination of "general good." *McGee,* 39 Ohio St.3d at 286, 530 N.E.2d at 904; *Essman v. Jefferson Twp. Bd. of Trustees* (Mar. 23, 1994), Montgomery App. No. 14149, unreported, 1994 WL 95260.

█ Whether a proposed annexation will serve the general good of the inhabitants and owners of the territory sought to be annexed is a factual determination within the discretion of the commissioners. *McGee,* 39 Ohio St.3d at 288, 530 N.E.2d 902, 905–906. The commissioners' decision whether the general good of the area to be annexed will be served by the annexation may be overturned only if the reviewing court finds it to be "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record." R.C. 2506.04; *McGee,* at 288–289, 530 N.E.2d at 905–907.

The commissioners found that the police, fire, and emergency services provided by the township and by Kettering were comparable. It found, however, that the township did "a significantly better job of removing ice and snow from its residential streets." It denied the annexation on the ground that snow removal and road maintenance would "be lost" if annexation occurred and that the general good of the area therefore would not be served by annexation.

Upon reviewing the evidence, the trial court concluded that the township's and Kettering's abilities to remove snow and ice were comparable, but noted that there was some evidence that the township's past performance in this area had been better than Kettering's. Insofar as assessment of this evidence turned on the credibility of the witnesses, the trial court deferred to the commissioners' determination that the ice and snow removal services were better in the township. The trial court also concluded that the annexation would be detrimental to

the proposed area because the residents would incur an income tax in Kettering and would lose the benefit of the relationship they had developed with the Beavercreek Police Department.

The petitioners argue that the trial court erred in considering Kettering's income tax and residents' relationships with the Beavercreek Police Department as bases for denying annexation. This argument has merit. The Supreme Court has expressly held that considering income tax as a factor with regard to a proposed annexation is error as a matter of law because " 'the fact that some inhabitants will now have to pay a city income tax is an unavoidable consequence of the state policy that encourages annexation of land into municipalities.' " *Smith*, 81 Ohio St.3d at 614, 693 N.E.2d at 224, quoting *In re Petition for Annexation of 165.65 Acres from Falls Twp. to Zanesville* (Jan. 10, 1996), Muskingum App. No. CT–94–32, unreported, 1996 WL 74664. In our view, the trial court's consideration of the residents' lost relationship with the Beavercreek Police Department suffers from the same infirmity. Changes in service providers are an inevitable consequence of the state's policy favoring annexation, and it would be inconsistent with this policy to consider such a change as a factor weighing against the general good of the territory.

The remaining issue upon which the trial court relied was the superior ice and snow removal services provided by the township. Although the trial court properly deferred to the commissioners on issues of witness credibility, we are troubled by the emphasis placed on this one service rather than on the services as a whole. From all of the evidence, it is clear that Kettering offers services at the same level, if not at a higher level, than the township. It also offers additional services, such as recreational facilities and leaf collection, that the township does not offer. Moreover, the commissioners' assessment that snow and ice removal services would "be lost" if annexation were allowed overstates the evidence. There was no question that Kettering provided these services, but some residents believed that the township did a better job of providing these services.

"[U]nless it is shown that the [annexing city] is unable to provide the necessary services that a city must provide, the commissioners may not use services as a justification to deny annexation." *Smith*, 81 Ohio St.3d at 615, 693 N.E.2d at 224. In our view, this is precisely what the commissioners did. Considering the total service package offered by Kettering and by the township as well as the wishes of the owners to be annexed, and keeping in mind that the annexing municipality is required only to have adequate services, not superior ones, it seems clear that the general good of the territory sought to be annexed would be served by annexation. Even assuming that the township provided superior snow removal services, the commissioners acted arbitrarily in our view

in concluding that this one factor outweighed the wishes of the majority of owners and the evidence of Kettering's equal or better services in other areas.

In so holding, we reject the commissioners' contention that the Supreme Court's holding in *Smith,* 81 Ohio St.3d 608, 693 N.E.2d 219, is distinguishable. In *Smith,* the Supreme Court held that the wishes of the property owners regarding annexation must be considered in determining the general good of the territory. Only one property owner was at issue in *Smith,* and the commissioners claim that the holding therein is limited to cases in which one hundred percent of the owners in the proposed area favor annexation. Although only one owner was involved in the proposed annexation in *Smith,* our reading of the case does not support the commissioners' narrow interpretation. In our view, the owners' desires ought to be considered in all annexation proceedings.

For the foregoing reasons, we reverse the trial court's judgment and order that the petition for annexation be granted.

*Judgment reversed.*

FAIN and FREDERICK N. YOUNG, JJ., concur.